ALFRED OLSON, appellant, v. CITY OF WATERLOO et al., appellees.

No. 48120.

(Reported in 54 N.W.2d 458)

JULY 28, 1952.

John W. Gwynne, of Waterloo, for appellant.

Upton B. Kepford, of Waterloo, for appellees.

MULRONEY, C. J.—Plaintiff, as a Waterloo citizen and taxpayer, sued the city and its councilmen and other municipal officers for injunctive relief and to set aside as void a city ordinance providing for the issuance of sewer bonds and a tax levy for their payment. The ordinance which was adopted September 25, 1951, provided for the issuance of $500,000 general obligation bonds payable by an unlimited tax levy under section 396.22, Code, 1950. That section provides for the issuance of such bonds and plaintiff admits the above Code section has not been repealed, either expressly or by implication. Plaintiff's argument is that the above Code section has been "affected" by the enactment of chapter 159, Acts of the Fifty-fourth General Assembly, effective July 4, 1951. The latter Act in section 1, preserved existing statutes authorizing municipal corporations to levy taxes,

"except as modified by the provisions of this Chapter." We recognize plaintiff's argument as a contention that section 396.22, Code, 1950, was modified by chapter 159, Acts 54th G. A. The specific argument advanced is centered around the last sentence in section 18 of chapter 159, Acts 54th G. A., which provides as follows:

"The council may cause bonds to be issued for purposes of cemetery purchase, dump ground purchase, grading, street improvement, sewer and purifying plan construction, flood protection, equipping fire departments, airports, and parking lots, provided that the maximum amount of such outstanding bonds at any one time shall be no more than can be retired within twenty years, both as to principal and interest, by a levy not to exceed five mills, and provided further that the maximum millage levy authorized by section two (2) shall be reduced by whatever such amount is required to be levied in the debt service fund for financing such bonds."

The questions presented by the appeal really divide into two general propositions. The first general question is whether the bonds are limited levy bonds or general obligation bonds. The second general question has to do with the plan or method the city should follow in levying the taxes to pay the bonds.

I. Plaintiff's argument starts with a construction of the above portion of section 18 as a limitation of levy—five mills—to pay the principal and interest of all bonds of the type mentioned therein. It proceeds with the argument that this affects or modifies section 396.22, Code, 1950, so that bonds issued thereunder cannot be general obligation bonds—that they must be limited levy bonds payable by a millage levy not to exceed five mills to pay all the classes of bonds enumerated in section 18. The trial court dismissed plaintiff's petition, holding that section 396.22 was not repealed, expressly or by implication, and section 18 did not "in any way affect" the said statute. We reach the same result by holding section 18 does not provide for any limitation of levy to pay the bonds of the type enumerated therein.

The defendants contend "the only reasonable and correct interpretation of this provision [section 18] is that it limits only the total amount of bonds which may be issued to that

amount which a levy of not to exceed five mills will retire in not to exceed twenty (20) years, based upon adjusted, assessed valuation as of the date of issue." We think this is the correct construction of the Act. The section is a grant of authority to issue unlimited levy bonds with a limitation on the grant. It is not a grant of authority to issue limited levy bonds. It starts out with the grant: "The council may cause bonds to be issued" and then provides a limitation as to face amount of all the bonds but no limitation as to millage for retirement. Plaintiff fastens on the words: "the maximum amount of such outstanding bonds at any one time shall be no more than can be retired within twenty years, both as to principal and interest, by a levy not to exceed five mills * * *" and argues this limits the levy in future years—when possibly assessed valuations might drop—to five mills. This clause does not limit the levy to pay bonds, properly issued under the Act. It provides a factor to be used to determine the right to issue the bonds "at any one time." Once issued the bonds are general obligation bonds.

Under the agreed statement of facts in this case the bonded indebtedness of the City of Waterloo of bonds specified in section 18, chapter 159, Acts 54th G. A., plus the $500,000 issue authorized by the ordinance, would require a millage rate for retirement (within twenty years) of principal and interest of less than five mills based on the adjusted assessed value on January 1, 1951. Since, under our construction, authority to issue the general obligation bonds here involved is given under both section 396.22, Code, 1950, and section 18, chapter 159, Acts 54th G. A., there is no point in deciding whether the latter law modifies the former. Obviously it does not modify it in respect to the right of defendant City to issue the general obligation sewer bonds that are the subject of the ordinance. We note that under section 396.22, Code, 1950, the right to issue the bonds of the type therein mentioned is limited to a debt limitation of five per cent of the taxable value of the property of the city, while under section 18 the right to issue the bonds of the type therein mentioned is narrowed to such as will be retired in twenty years by a five-mill levy. Since the bonds in question comply with the more restrictive limitation contained in section 18 there is no reason to decide whether the broad grant of authority to issue

bonds under section 396.22, Code, 1950, is modified by the limitation on the grant contained in section 18, chapter 159, Acts 54th G. A.

Further authority for the construction here made, and authority that this is a bond limitation to be based on the latest equalized actual valuation is found in sections 76.1, 76.2 and 76.3, Code, 1950. Sections 76.1 and 76.2 place a mandatory duty on the governing authorities of counties, cities, towns and school districts to make annual levies on all of the taxable property in such corporations to pay the principal and interest of bonds they issue within a period not to exceed twenty years. Section 76.3 provides: "Tax limitations in any law for the issuance of bonds shall be based on the latest equalized actual valuation then existing and shall only restrict the amount of bonds which may be issued."

The trial court held the above provisions were not repealed, expressly or impliedly, or otherwise affected by chapter 159, Acts 54th G. A. We agree that section 76.3 quoted above is not in any manner repealed, expressly or impliedly, or otherwise affected by chapter 159, Acts 54th G. A. And section 18 of chapter 159, Acts 54th G. A. retains the same twenty-year period limitation found in sections 76.1 and 76.2, Code, 1950, as to bonds issued thereunder. Also section 13, chapter 159, Acts 54th G. A., discussed in the next division, retains the mandatory levy provisions of sections 76.1 and 76.2 of the 1950 Code. Thus it would seem the powers and duties of the municipal authorities, as to levies to pay the bonds in question, would be the same under all of the statutes.

II. We come now to the second general question in the case as to the method or plan the city should follow in levying the tax to pay these bonds. The specific question is whether the plan for municipal financing set forth in chapter 159, Acts 54th G. A. should be followed and if so the applicable provisions of the latter Act which should govern. We think chapter 159, Acts 54th G. A. is applicable and the provisions thereof should govern as to the method of municipal financing—including the method for financing its bonded indebtedness incurred before and after the passage of the said Act. This is not to say tax levies to pay municipal bonds were changed by the Act. It is merely pro-

cedural. Much of the history concerning the passage of this Act, with quotations from the committee report that recommended its passage, is contained in the recent opinion of Alexander v. Town of Montezuma, 243 Iowa 251, 51 N.W.2d 456. There is no need to again refer in detail to the problem the Act was designed to correct or to quote the various sections of the Act showing the intent to carry out the committee recommendations. The Act is designed to systematize procedural laws governing municipal financing. It is enough to show that resort to the financing scheme set forth in the Act will not result in any change in the tax levies to pay these bonds.

The trial court held these bonds were to be paid out of the debt service fund provided for by section 13, chapter 159, Acts 54th G. A. This section is quoted in full in Alexander v. Town of Montezuma at pages 257 and 258 of 243 Iowa, page 460 of 51 N.W.2d. The trial court was correct in this holding. Section 18, chapter 159, Acts 54th G. A., previously quoted, refers to the debt service fund, and the force of this reference is that all bonds of the type enumerated therein are to be financed by the debt service fund. The bonds in question are of the type enumerated in section 18. There is no limitation of levy in section 13. The mandate is to levy such number of mills as will pay the interest and principal on all outstanding bonds. The effect that the levy to pay bonds might have—such as a decreasing effect on other maximum levies provided in chapter 159, Acts 54th G. A.—is of no interest here. The bonds are valid and they were properly payable from the debt service fund by a general tax with no limitation on the levy. Alexander v. Town of Montezuma, supra.

III. The suggestion of plaintiff that the levy to pay the bonds should be under section 9, chapter 159, Acts 54th G. A. is without merit. This latter section creates one of the functional funds called the Sanitation Fund and, while it provides for levies, within a limitation of seven mills for several enumerated purposes relating to sanitation, including sewer construction, it makes no provision for bonds or levies to pay bonds. Besides, as pointed out, section 18 refers to the debt service fund where these bonds will be financed. It would be contrary to the express

provisions of the Act to hold the levy to finance these bonds was to come out of the seven-mill maximum sanitation levy.

The trial court was right in holding the ordinance valid and denying injunctive relief.—Affirmed.

All JUSTICES concur.