WALTER R. YARN, appellant, v. CITY OF DES MOINES, a municipal corporation, et al., appellees.

No. 48154.

(Reported in 54 N.W.2d 439)

JULY 28, 1952.

Fey H. Moody, of Des Moines, for appellant.

John A. Blanchard, Harris M. Coggeshall, and Ray C. Fountain, all of Des Moines, for appellees.

GARFIELD, J.—The electors of the City of Des Moines duly authorized it to erect and equip a memorial building as provided by chapter 37, Codes 1946, 1950, and to issue bonds not to exceed $5,250,000 to cover the expense thereof. Under date of October 1, 1950, bonds of $1,250,000 were issued and sold. A site has been acquired and the city is ready to proceed to erect and equip the building.

On April 14, 1952, the city adopted ordinance 5384 providing for issuance of the remaining $4,000,000 of bonds and levy of an annual tax to pay the interest and principal thereof within a period of nineteen years. In so doing the city acted pursuant to Code sections 37.6, 37.7, 76.1, and 76.2.

Plaintiff, an elector-taxpayer, brought this equity action to set aside as void the ordinance and enjoin the proposed bond issue and tax levy on the ground a tax for payment of the bonds can be levied only under section 10, chapter 159, Acts of the Fifty-fourth General Assembly, effective July 4, 1951. The trial court held chapter 159 did not repeal the Code sections under which the city acted and that the ordinance as well as the proposed bonds and tax levy therein provided for were therefore valid. Plaintiff has appealed.

The primary question presented is whether the statutes under which the city acted in providing for the proposed bond issue and tax levy, especially Code sections 37.7 and 76.2, were repealed or amended by implication or otherwise superseded by chapter 159, Acts 54th G.A. It is not claimed the city has not acted properly under the statutes as they existed when chapter 159 took effect.

The city has sought throughout to erect and equip a memorial building as provided in Code chapter 37. The proposition on which the electors voted at both municipal elections expressly so stated. Section 37.6 provides for the issuance of "liberty memorial bonds" for the purpose of providing funds for the acquisition of necessary ground and the erection of the building and for the necessary equipment. The bonds are "to be issued and sold as provided by law relative to general county and city bonds;" and are to become due in not more than twenty years.

Section 37.7 states: "Levy for bonds. For the purpose of liquidating such bonds together with the interest thereon, such county, city, or town shall levy upon all the property within the limits thereof, subject to taxation for such purpose, in addition to all other taxes provided by law, a special tax not exceeding in any one year four mills on the dollar for a period of not exceeding twenty years."

Section 37.8 provides for a tax levy for "the development, operation, and maintenance of such building." It is not here involved but we mention it because it, as well as section 37.7, is referred to in section 10, paragraph 12, chapter 159, Acts 54th G.A., which plaintiff contends repeals or modifies 37.7.

Code section 76.1 in the chapter entitled "Maturity and Payment of Bonds" provides in part: "The annual levy shall

be sufficient to pay the interest and approximately such portion of the principal of the bonds as will retire them in a period not exceeding twenty years from date of issue."

Section 76.2 states: "Mandatory levy. The governing authority of these political subdivisions before issuing bonds shall, by resolution, provide for the assessment of an annual levy upon all the taxable property in such public corporation sufficient to pay the interest and principal of such bonds within a period named not exceeding twenty years. A certified copy of this resolution shall be filed with the county auditor * * *; and the filing thereof shall make it a duty of such officer * * * to enter annually this levy for collection until funds are realized to pay the bonds in full."

Chapter 159 (Acts 54th G.A.) is designated "Municipal Revenue." The title reads, "AN ACT relating to taxation and other sources of municipal revenue, and to repeal chapter four hundred four (404) of the Code relating thereto and enact a substitute therefor, and to repeal certain other sections of the Code relating thereto, and to amend certain sections of the Code relating thereto."

The principal provision of chapter 159 which plaintiff contends repeals or modifies Code section 37.7 is section 10, as follows: "Municipal enterprises. Municipal corporations shall have power to annually cause to be levied for a fund to be known as the municipal enterprises fund an annual tax not to exceed ten (10) mills on the dollar on all taxable property within the corporate limits and allocate the proceeds thereof to be spent for the following purposes:" There follow (in section 10) twelve numbered, specified purposes for which municipalities have power to make an annual levy for "the municipal enterprises fund." Paragraph 12 of section 10 reads: "12. In lieu of the taxes provided by sections thirty-seven point seven (37.7) and thirty-seven point eight (37.8) for memorial halls and monuments;".

Paragraph 13 of section 10 states: "For any other purpose having to do with municipal enterprises, specifically authorized by law."

Plaintiff puts much stress on the words in paragraph 12, "In lieu of the taxes provided by" section 37.7. It is argued that repeal or modification of 37.7 is clearly indicated or, in

any event, the only tax the city may levy to provide for payment of the proposed bond issue is the annual levy under section 10, chapter 159.

The trial court held section 10, paragraph 12 (chapter 159) gave municipalities an additional method of paying for a memorial building in lieu of that provided by Code sections 37.6 and 37.7, that the two sets of provisions are not in conflict and, as previously stated, the statutes under which the city acted were not repealed by chapter 159. The court also held that the taxes to be levied under Code section 76.2 in payment of the proposed bond issue should be administered through the "debt service fund" provided for by section 13 of chapter 159 rather than the "municipal enterprises fund" provided for by section 10.

Section 13 (chapter 159) states: "Debt service. Municipal corporations shall establish a debt service fund and shall cause to be levied for said fund a tax in such number of mills on the dollar on all taxable property within the corporate limits, as is necessary for the following purposes:

"1. To pay all judgments against the municipal corporation other than those specifically authorized by law to be paid from other funds;

"2. To pay the interest accruing on funding and refunding bonds outstanding, and such proportion of the principal * * *;

"3. For such other purposes relating to debt service as are specifically authorized by law;

"It shall be the duty of the council to allocate the proceeds of the tax herein provided to accomplish the purposes herein enumerated."

A preliminary matter of evidence is presented. Defendants (the city and some of its officials) offered in evidence the Report of the Municipal Statutes Study Committee created by the Fifty-third General Assembly made to the Governor of Iowa about November 15, 1950, less than two months before the Fifty-fourth General Assembly convened. Defendants also offered a directive by the state comptroller to all county auditors issued in May 1951, and a similar document issued in April 1952 by the successor to the former comptroller. The trial court gave some consideration to these exhibits in construing chapter 159

notwithstanding plaintiff's objection the law is plain and unambiguous so resort to construction is unnecessary. Admissibility of a fourth exhibit (No. 2) offered by defendants need not be considered since it is mainly a reprint of statutory provisions and does not aid either side.

We think the trial court properly considered the three exhibits first referred to. Of course resort cannot be had to construction if a statute is clear and unambiguous. Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 240 Iowa 734, 742, 35 N.W.2d 848, 852; State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 868, 48 N.W.2d 281, 285; The Hoosier Casualty Co. of Indianapolis v. Fox, Judge Graven, 102 F. Supp. 214, 235; 50 Am. Jur., Statutes, section 225.

This same Report of the Municipal Statutes Study Committee was given much consideration by us in Alexander v. Town of Montezuma, 243 Iowa 251, 51 N.W.2d 456, where chapter 159 was construed. Our opinion recognizes that chapter 159 is properly subject to construction, quotes from the report at length and observes that the Act indicates the intention of the Fifty-fourth General Assembly to effect objects of the committee as stated in its report.

The directives to county auditors from the two state comptrollers appear to have been issued pursuant to the second sentence of Code section 444.7. The first of these directives calls attention to chapter 159 and states, "Bond Levies will be made on the budget under the Debt Service Fund." The second directive also calls attention to chapter 159 and provides: "Levies to retire all general obligation bonds and interest thereon should be levied under Debt Service Fund, and the maximum millage authorized by Chapter 159, Section 2, Acts of the 54th G.A., need not be reduced a like amount * * *." This construction placed upon chapter 159 by the state comptrollers furnishes some support for defendants' contention as to its meaning.

While not controlling, courts give weight to the construction of statutes of doubtful meaning by administrative officials charged with their operation and enforcement. State ex rel. McElhinney v. All-Iowa Agricultural Assn., supra, and authorities there cited; Umthun v. Day & Zimmermann, Inc., 235 Iowa 293, 295, 16 N.W.2d 258, 259, and citations. The construction

placed upon chapter 159 by the two state comptrollers is entitled to less weight than if it were of longer standing. However, it could not have been of longer standing here—it seems to have existed since chapter 159 was approved in May 1951.

▇ We think the statutes under which the city acted in providing for the proposed bond issue and tax levy, especially sections 37.7 and 76.2, were not repealed or otherwise superseded by chapter 159, Acts 54th G.A., and that section 10 of chapter 159 does not provide an exclusive method for financing the erection and equipment of a memorial building. We mention some of the considerations which lead to this conclusion.

Chapter 159 contains no express repeal or amendment of any statute under which the city acted although it expressly repeals or amends a great many Code sections which are referred to by number. We say in Alexander v. Town of Montezuma, supra, 243 Iowa 251, 256, 51 N.W.2d 456, 459, that chapter 159 repeals chapters 404 and 406 "and refers to, amends, and repeals over one hundred other Code sections." See in this connection Ziegler v. Witherspoon, 331 Mich. 337, 49 N.W.2d 318, 330.

▇▇ The effect of plaintiff's argument is that chapter 159, especially section 10 thereof, repeals by implication Code sections 37.7 and 76.2 insofar as they apply to cities and towns. Repeals by implication are not favored by the courts and will not be upheld unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary. The general rule is that if by any fair and reasonable construction prior and later statutes can be reconciled both shall stand. State ex rel. McElhinney v. All-Iowa Agricultural Assn., supra, 242 Iowa 860, 867, 48 N.W.2d 281, 285, and citations. See also Haubrich v. Johnson, 242 Iowa 1236, 1241, 50 N.W.2d 19, 22; DeShaw v. South Fork Twp. Sch. Dist., 231 Iowa 27, 33, 300 N.W. 650, 652, 653.

The rule that repeals by implication are not favored has special application to important public statutes of long standing. 50 Am. Jur., Statutes, section 546; 59 C. J., Statutes, section 510, pages 908, 909; Ziegler v. Witherspoon, supra, 331 Mich. 337, 49 N.W.2d 318, 331, and citations. Code section 37.7 was enacted in 1919 as part of section 3, chapter 170, Acts of the Thirty-eighth General Assembly. Subsequent changes in it

are not here material. Code section 76.2 was passed in 1927 as section 2, chapter 131, Acts of the Forty-second General Assembly.

We find no language in chapter 159 from which an intent to repeal or supersede sections 37.7 or 76.2, insofar as they apply to cities and towns, appears clearly and unmistakably. Section 10 (chapter 159) states, "Municipal corporations shall have power to annually cause to be levied * * * an annual tax not to exceed ten (10) mills * * *." This is a grant of power, not a revocation of the power conferred and the mandatory duty imposed by sections 37.7 and 76.2. If, and only if, the power granted by section 10 (paragraph 12) with respect to memorial buildings is exercised are the taxes therein referred to "in lieu of the taxes provided by" section 37.7. In view of the duty imposed upon cities by 37.7 and 76.2 to levy a tax as therein provided for payment of bonds nothing in chapter 159 indicates the method of financing a memorial building provided in section 10 is exclusive.

Chapter 159 is a general law. Both sections 37.7 and 76.2 are special or specific. Section 37.7 provides only for a tax levy to liquidate bonds for the erection and equipment of memorial buildings and monuments. Section 76.2 provides only for the levy of a tax with which to pay bonds of counties, cities, towns and school districts.

A fundamental rule applicable here is that where a general statute, if standing alone, would include the same matter as a special act and thus conflict with it, the special act will be considered an exception to the general statute, whether it was passed before or after the general enactment. Ervin v. Triplett, 236 Iowa 272, 276, 18 N.W.2d 599, 601, and citations; 50 Am. Jur., Statutes, section 564; 59 C. J., Statutes, section 623. See also Ziegler v. Witherspoon, supra, 331 Mich. 337, 49 N.W.2d 318, 331; In re Miller's Estate, 261 Wis. 534, 53 N.W.2d 172, 173.

Under the rule just stated sections 37.7 and 76.2 govern the levy of a tax to liquidate the bonds voted by the electors here. The most section 10 (paragraph 12) chapter 159 does is to provide an alternate method for financing a memorial building. Of course the tax authorized by section 10 could not be levied

in addition to that required by Code sections 37.7 and 76.2, but only in lieu thereof.

The construction we place on chapter 159 accords with the intent of the Municipal Statutes Study Committee expressed in its report above referred to in these words: "3. That municipal corporations should be given broad latitude in determining the amount needed to finance the several activities that fall within a function of municipal government. * * * The state should not specify arbitrary limitations on tax levies for specific purposes that are so low that it is not possible for municipal officials to successfully cope with their local problems. * * * 5. That no arbitrary limitations should be imposed on tax levies required * * * for servicing municipal indebtedness * * *." See in this connection Alexander v. Town of Montezuma, supra, 243 Iowa 251, 255, 51 N.W.2d 456, 458, 459.

Section 10, chapter 159, places a limit of ten mills on all taxes that may be levied for all twelve purposes therein designated, and any other specifically authorized by law, having to do with municipal enterprises. As we observed in the Alexander case, supra (at page 257 of 243 Iowa, page 460 of 51 N.W.2d), section 2, chapter 159, places an aggregate ceiling of thirty mills on all taxes that may be levied under sections 6 to 12 inclusive of the Act, but there is no limit fixed in chapter 159 on the taxes which become part of the debt service fund under section 13. That fund is in addition to those provided for by sections 6 to 12. Code section 37.7 makes mandatory a levy not exceeding four mills for the single purpose of liquidating liberty memorial bonds. To hold that such levy must be included within the limit of ten mills fixed by section 10 would be contrary to the express intent of the legislative committee.

Our conclusion finds support in Alexander v. Town of Montezuma, supra, 243 Iowa 251, 51 N.W.2d 456, where it was contended and the trial court held a tax to pay bonds for improvement of the town's waterworks must be levied under section 12, chapter 159. We held, however, bonds were payable out of the debt service fund established by section 13 and the town properly proceeded under Code chapter 407 which we said was not repealed by chapter 159. It is true that holding is based in part upon an amendment to Code section 407.14 found in section

88, chapter 159, Act 54th G.A., which provides the bonds in question shall be paid from the debt service fund, and we have no such amendment here.

However, this language from the Alexander case supports our conclusion here (page 260 of 243 Iowa, page 462 of 51 N.W.2d) : "The payment of both principal and interest of such bonds as are involved in this appeal, out of the debt service fund, is provided in subsection 3 of the Debt Service section (13), which reads: 'For such other purposes relating to debt service as are specifically authorized by law.' "

▮▮▮▮  Statutes subject to construction will be construed in the most beneficial way to prevent hardship, to favor public convenience and to oppose prejudice to public interests. See 2 Lewis' Sutherland, Statutory Construction (Second Ed.), section 490; 50 Am. Jur., Statutes, section 381; 59 C. J., Statutes, section 574; Ziegler v. Witherspoon, supra, 331 Mich. 337, 49 N.W.2d 318, 331, and citations. The construction we have placed on chapter 159 accords with this principle.

Purchasers of the city's bonds will want to know that definite provision has been made for an adequate tax levy to pay interest and principal of the bonds as they mature. The levy provided for by ordinance 5384 under Code sections 37.7 and 76.2 gives that assurance. If plaintiff were to prevail, payment of the bonds would depend upon an annual levy in the future for one of a dozen purposes stated (as plaintiff claims) in section 10, chapter 159, with an aggregate limit of ten mills. If payment of the bonds were subject to such uncertainty their sale would probably be even more uncertain. This would not be the aid to municipal financing which the legislature intended.

There is nothing in section 1, chapter 159, that aids plaintiff. The section states: "Power to tax. Municipal corporations shall have power to cause to be levied, the taxes provided by this Chapter, and such other taxes and special assessments as are specifically provided by law except as modified by the provisions of this Chapter."

▮▮▮▮  Clearly the taxes proposed to be levied by ordinance 5384 are included in "such other taxes * * * as are specifically provided by law." Code sections 37.7 and 76.2, heretofore quoted, not only specifically provide for the levy of the proposed taxes,

they make such a levy mandatory. Section 1, chapter 159, thus reaffirms the power of cities and towns to levy these taxes unless sections 37.7 and 76.2 are "modified by the provisions of this Chapter [159]." Language that says in effect other taxes authorized by law may be levied except as the law is modified by chapter 159 furnishes no support for the argument that sections 37.7 and 76.2 are in fact modified by chapter 159 to the extent that they are superseded insofar as they apply to cities and towns.

Able counsel for plaintiff has advanced some other arguments not discussed herein. They have all been carefully considered. The decree is—Affirmed.

BLISS, WENNERSTRUM, SMITH, MANTZ, HAYS, and THOMPSON, JJ., concur.

MULRONEY, C.J., and OLIVER, J., specially concur in part and dissent in part.

MULRONEY, C. J. (specially concurring in part and dissenting in part)—I. I concur in that part of the majority opinion holding the bonds in question are general obligation bonds payable out of the debt service fund (section 13, chapter 159, Acts of the Fifty-fourth General Assembly) by an unlimited tax levy.

I agree with the majority opinion that sections 37.6 and 37.7, Code, 1950, which authorized the issuance and sale of these memorial bonds and the tax to pay them, were not repealed or modified by chapter 159, Acts 54th G.A. As the majority opinion points out, the bonds are "to be issued and sold as provided by law relative to general county and city bonds." (Section 37.6, Code, 1950.) In other words they were general city bonds payable out of an unlimited tax levy on city property. Sections 76.1 and 76.2, Code, 1950, made it the mandatory duty of the city officials to levy a tax to pay these bonds within a twenty-year period. Section 37.7, Code, 1950, did not limit the tax to pay the bonds to four mills during the period they were outstanding. It limited the number and amount of bonds which the city could issue under section 37.6, Code, 1950, to that amount which four mills would retire at the equalized, assessed

valuations then existing. This is provided for in section 76.3, Code, 1950, as follows:

"Tax limitations in any law for the issuance of bonds shall be based on the latest equalized actual valuation then existing and shall only restrict the amount of bonds which may be issued."

The above section was not repealed expressly or by implication or otherwise modified by chapter 159, Acts 54th G.A. I think there is no question presented as to whether sections 76.1 and 76.2 were repealed or modified. These sections placed the mandatory duty on the city to provide for an annual levy of sufficient tax to retire all bonds "of every kind and character" within twenty years. The debt service fund, or section 13, chapter 159, Acts 54th G.A., places the duty on the city to levy such tax "as is necessary" to retire "outstanding" bonds. There is a slight difference in the latter section in that the period limitation for retirement permits a quarterly percentage basis but the point is not argued. One of the specific recommendations of the committee that recommended this bill was: "That no arbitrary limitations should be imposed on the tax levies required * * * for servicing municipal indebtedness." See quotation from the committee report in Alexander v. Town of Montezuma, 243 Iowa 251, 254, 255, 51 N.W.2d 456 at 459. I think it is perfectly clear that chapter 159, Acts 54th G.A., provides for an unlimited levy to pay all outstanding bonds. It is firmly established in chapter 159, Acts 54th G.A., that section 13 is the paramount fund and it must always raise enough money by a sufficient millage levy to pay interest and principal on all outstanding municipal bonds. One of the early sections of the Act (section 4) makes it the mandatory duty of the municipal authorities after estimating revenues to "allocate sufficient revenue to the debt service fund from other funds or sources to pay all bonds and interest thereon as they become due."

The majority reaches the conclusion that the bonds are general obligation bonds by first concluding that section 76.2, Code, 1950, providing for mandatory levies sufficient to pay all bonds of counties, cities, towns and school districts, has not been repealed or modified insofar as it applies to the cities and towns. It seems to me perfectly apparent that such mandatory pro-

visions in 76.2 have been repeated. The legislature, in chapter 159, was drawing a comprehensive law to codify and simplify all of the laws with respect to municipal financing. Necessarily this involved a new law where, under the old, some financing duties bracketed the municipalities with other political subdivisions. But this does not mean the old law is to be resorted to when the new makes provision for the same duties. Some sections of chapter 159 are exact copies of the laws they supersede. I think it idle to talk of whether section 76.2, Code, 1950, has been amended or modified by chapter 159, Acts 54th G.A., insofar as it applies to city and town bonds. The mandatory levy requirements of the former statute insofar as city and town bonds are concerned have been carried over into the comprehensive municipal financing statute that is now chapter 159, Acts 54th G.A. All the legislature did by section 13, chapter 159, Acts 54th G.A., is make one fund—debt service fund—out of what was before Judgment bond fund, Sewer bond fund, Paving bond fund, Memorial bond fund, Airport bond fund, and perhaps many more.

II. I think the next question in the case is whether the levy to pay the bonds is to be included in the ten-mill maximum provided for in section 10, chapter 159, Acts 54th G.A. I think the majority feel that if the levy to pay these bonds is included in the levy for the Municipal Enterprises fund it will result in a limited levy for that fund is limited to ten mills for all municipal enterprises. I do not think it would have that result at all.

Section 10, chapter 159, Acts of the Fifty-fourth General Assembly provides for "an annual tax not to exceed ten (10) mills" for many purposes and "in lieu" of taxes provided in seven Code sections—one of them being section 37.7, which is admittedly the section providing for a tax to pay memorial bonds. As pointed out in Alexander v. Town of Montezuma, 243 Iowa 251, 51 N.W.2d 456, the design of the law (chapter 159, Acts 54th G.A.) was to reduce the number of funds by grouping related municipal functions into one fund. Part of the committee report stated: *"In lieu* of the 164 municipal funds now provided by statute, Bill No. 13 makes provision for nine funds * * *."* (Italics supplied.) And, to carry out the committee

thought, each functional fund is to stand in lieu of the many specific tax statutes authorizing special taxes and expenditures for the same or similar functions. The bill followed the recommendations of the committee, including the recommendation to remove limitations on tax levies for specific purposes, and substituting over-all limitations on total millage levies. These over-all limitations for all of the funds are quite high. Added together they would permit levies of fifty-three mills, but section 2 of the Act provides the aggregate levy shall not exceed thirty mills. See Alexander v. Town of Montezuma, supra. Other provisions provide for flexibility and transfers from one fund to another so that "Municipal corporations may fit their income to their needs." See section 5.

The reference in subsection 12 of section 10, chapter 159, Acts 54th G.A., to the tax provided in section 37.7 to pay these bonds is not to limit the tax to pay the bonds but to diminish the permissible levy for municipal enterprises by the amount of the tax required to pay the bonds. In other words, the millage required to pay these bonds is to stand as a part of the permissible millage for municipal enterprises. This is the obvious legislative intent. Further indication of this intent is shown in section 18 where provision is made that the millage required to pay bonds enumerated therein shall reduce the maximum millage (thirty mills) allowed by section 2 of the Act.

The record shows that the 1951 tax levy for municipal enterprises for the City of Des Moines was 2.389 mills; that a one mill levy will produce $183,956 upon the basis of the last assessed valuation of city property. Less than a two mill levy each year would, on present valuations, satisfy the levy provisions of the ordinance. I think the clear mandate of the statute is for the City of Des Moines to place the levy (unlimited by any statute) to pay these bonds on its books as a part of the levy to pay for municipal enterprises. And I think that is the only effect of the reference in section 10, subsection 12. It has a diminishing effect on the levy which is to be made each year to pay for municipal enterprises while these bonds are outstanding and unpaid.

The trial court and the majority hold that section 10, subsection 12, chapter 159, Acts 54th G.A., provides for an addi-

tional power or method for paying for a municipal building in lieu of that provided in section 37.7, Code, 1950. I cannot follow the reasoning. Before the passage of chapter 159 the bonds were payable by an unlimited tax levy. This is what the majority holds. How could section 10, subsection 12 of chapter 159 give any additional power or method? The right answer, as I see it, is the new Act gave the municipality an account—municipal enterprises—wherein . it could carry this levy and once there it reduced, by the amount of the annual levy to pay the bonds, the total amount the city could spend for municipal enterprises each year.

The guiding consideration for interpretation of the words "in lieu of" is revealed by the statement of the problem and the recommendations of the committee, stated in the committee report. These are all set forth in Alexander v. Town of Montezuma, supra. It is apparent that chapter 159 is a municipal bookkeeping statute. It is mandatory in the sense that cities and towns must now make their levies and allocations under the functional fund and other fund provisions provided in chapter 159. The object was to have these funds stand "in lieu" of the one hundred sixty-four funds that were. previously carried on the municipal books. A study of chapter 159, Acts 54th G.A., reveals that in sections 7, 8, 10, 11 and 12 the single municipal funds therein named are to stand "in lieu" of many tax levies authorized in specifically referred to statutes contained in the Code of 1950. The wording in these other sections is identical with the wording of subsection 12 of section 10. The majority interpretation, holding the levy under the referred to statute is "additional" and not to be considered as a levy for the named fund, will of course rule the interpretation to be placed on the same wording in other sections. It will mean all of these specific funds are restored, and moreover, the levies made under them will not be considered as levies for the named funds.

Section 25, subsection 5, chapter 159, Acts of the Fifty-fourth General Assembly provides:

"No other statute whether heretofore or hereafter enacted relating to the taxing power of municipal corporations, shall be construed to increase, the limits on millage levies established

in * * * sections six (6) through twelve (12) of this Act, unless this Act is amended."

The majority holding seems to me a clear increase of the maximum millage levy for the enterprises fund in section 10 by the amount of the levy to pay these memorial bonds. It may not be very important in this case for with the levy included the city would not use half of the permissible levy for municipal enterprises. But it is very important as a guide to an interpretation of the whole Act. When, as in the majority opinion, a particular result is reached by interpreting a clause that is repeated often in the statute, it illuminates the shortcomings of that result to show the same interpretation, applied to the same language, throughout the Act will be absolutely destructive of the manifest legislative intent. The full sweep of the majority opinion, as I understand it, is: when the Fifty-fourth General Assembly said in chapter 159 that a single functional levy was to be made "in lieu" of many specifically referred to levies under named statutes, it meant to provide for additional levies. This is contrary to the ordinary meaning of "in lieu" as something that is "instead of" or something that is to stand "in place of." I feel it is contrary to the apparent legislative intent.

I would hold this levy general and unlimited but I would not hold it is an additional levy to or something outside of the general municipal enterprises levy. I think the language of section 10 providing for a single levy "for a fund to be known as the municipal enterprises fund" in lieu of special taxes provided in many Code sections including: "in lieu of the taxes provided by section * * * 37.7 [memorial bond tax]", when properly construed, means the one general levy is to stand in lieu of and include the special levies. Such a construction would save the Act and in no wise destroy the general and unlimited character of the bond obligations.

OLIVER, J., joins.