John W. PETERS et al., Appellees,

v.

IOWA EMPLOYMENT SECURITY COMMISSION et al., Appellants.

No. 2-56489.

Supreme Court of Iowa.

Nov. 12, 1975.

Rehearing Denied Dec. 11, 1975.

Richard C. Turner, Atty. Gen., and Richard E. Haesemeyer, Sol. Gen., for appellants.

Herrick, Langdon, Belin & Harris, Des Moines, for appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves a declaratory judgment class action by employees of the Iowa Employment Security Commission challenging the right of the executive council and comptroller to exercise control over the position classification and pay plans of the employment security commission. The trial court sustained their challenge. We reverse.

At the root of plaintiffs' argument are two basic contentions. One is that certain provisions of Code chapter 19A establishing the merit system for state employees in Iowa do not apply to them. The other is that certain actions of the executive council and comptroller have violated applicable state and federal law. Resolution of the first contention requires a determination whether chapter 19A does entirely apply to plaintiffs. Resolution of the second contention requires a determination whether the executive council and comptroller have violated applicable law in the respects alleged.

The practical reason for this controversy is that the salaries of plaintiffs are paid with funds granted the State by the federal government. The employment security commission has prepared various pay plans for which federal funding purportedly would be adequate. Certain proposed salaries have been reduced when the plans have reached the executive council. As a result, plaintiffs allege substantial amounts available to pay the higher salaries have reverted to the federal government because not used by the State. Defendants' position is that the executive council has acted within its authority in modifying the pay plans and has reduced proposed salaries when necessary to keep employment security department salaries in line with those in comparable positions in other state agencies in keeping with merit system requirements.

I. The state merit system was created in 1967. Acts 62 G.A. ch. 95. Its purpose was "to establish for the state of Iowa a system of personnel administration based on the merit principles and scientific methods governing the appointment, promotion, welfare, transfer, layoff, removal and discipline of its civil employees, and other incidents of state employment." § 19A.1, The Code. The merit system established in chapter 19A was made applicable to all positions in state government then existing or thereafter established, with certain listed exceptions. § 19A.3, The Code. The exceptions do not include the regular, full-time employees of the employment security commission.

The statute establishes the merit employment department, headed by a merit employment commission. § 19A.4, The Code. The commission is directed to employ a director who acts as executive head of the department. §§ 19A.5, 19A.8, The Code.

The merit employment commission is required by § 19A.9, The Code, to adopt and amend rules for the administration and implementation of the merit system established in chapter 19A.

Under § 19A.9(1), the merit commission is charged with preparing, maintaining and revising a position classification plan "from a schedule by separate department for each position and type of employment *not otherwise provided by law* in state government as approved by the executive council for all positions in the merit system * * *." (Italics added). The merit department di-

rector may not allocate or reallocate a position to a different classification if it might "result in the expenditure of funds in excess of the total amount budgeted for the department * * * until approval has been obtained from the state comptroller." The statute also provides, "Schedules of positions and type of employment *not otherwise provided by law* shall be reviewed at least once each year by the governor and submitted to the executive council for continuing approval." (Italics added).

Under § 19A.9(2), The Code, the merit employment commission is charged with developing a pay plan "within the purview of an appropriation made by the general assembly *and not otherwise provided by law* for all employees in the merit system, * * *." (Italics added). The statute continues, "Such pay plan shall become effective only after it has been approved by the executive council after submission from the commission."

In § 19A.22, the statute provides, "The provisions of this act, including but not limited to its provisions on employees and positions to which the merit system apply, shall prevail over any inconsistent provisions of the Code and all subsequent Acts unless such subsequent Acts provide a specific exception from the merit system."

Plaintiffs acknowledge they are covered by the merit system created in chapter 19A. However, they contend the executive council and comptroller have no control over their position classification and pay plans because the provisions of § 19A.9(1) and (2) do not apply to them. They argue that their classification and pay plans are "otherwise provided by law" within the meaning of those provisions.

In so arguing, plaintiffs rely mainly upon § 96.11(4), The Code, which defines the authority of the employment security commission regarding personnel. That provision includes this language:

"Subject to other provisions of this chapter, the commission is authorized to appoint, fix the compensation, and pre-scribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. *The commission shall classify its positions and shall establish salary schedules and minimum personnel standards for the positions so classified.* All positions shall be filled by persons selected and appointed on the basis of competency and fitness for the position to be filled." (Italics added).

This authority of the employment security commission to classify its positions and adopt pay plans has been in the Code since 1936. Acts 46 G.A., Ex.Sess., ch. 4, § 11(d). The question here is whether this authority, and like authority in § 97B.5, The Code, has been impliedly repealed by the provisions of chapter 19A.

■ "Repeals by implication are not favored by the courts and will not be upheld unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary . . . ." *Yarn v. City of Des Moines,* 243 Iowa 991, 997, 54 N.W.2d 439, 442 (1952); see *Northern Natural Gas Co. v. Forst,* 205 N.W.2d 692, 697 (Iowa 1973); *Llewellyn v. Iowa State Commerce Commission,* 200 N.W.2d 881, 884 (Iowa 1972); *Radosevich v. City of Ottumwa,* 173 N.W.2d 522, 525 (Iowa 1970).

■ Although an express general repealing clause like § 19A.22 is ineffective as a repealing device, it does constitute an express recognition by the legislature that there are statutory provisions inconsistent with the act in which the clause is included and signifies a legislative intent to repeal such inconsistent provisions. 1A Sutherland on Statutory Construction § 23.08 at 221 (Fourth Ed. 1972); cf. *Kruse v. Gaines,* 258 Iowa 983, 986–987, 139 N.W.2d 535, 536–537 (1966). In addition, § 4.8, The Code, provides, "If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment by the general assembly prevails."

Since it is the later enacted statute, chapter 19A must prevail over § 96.11(4) if the provisions are in fact irreconcilable. Plaintiffs maintain they are not, insisting that §§ 19A.9(1) and (2) expressly exclude them from coverage from merit department position classifications and pay plans by exempting employees whose job classification and pay is "otherwise provided by law." They assert the legislature intended chapter 19A to apply to them only for record-keeping purposes. We disagree.

In § 19A.3 the legislature listed the state employees exempt from the chapter 19A merit system. Plaintiffs admit they are not on that list.

■ We are required to construe chapter 19A as a whole, giving effect to every part, in ascertaining the intent of the legislature. We should avoid strained, impractical or absurd results; and we should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. *Iowa Nat. Indus. Loan Co. v. Iowa State, Etc.,* 224 N.W.2d 437, 440 (Iowa 1974). Examined in light of these principles, it is manifest from the provisions of chapter 19A that the legislature intended to bring all state employees not specifically excepted into a unitary merit system. Inherent in this objective is the precept that all merit system employees should receive equal pay for equal work. The legislature provided for a uniform position classification and pay plan "so that the same qualifications may reasonably be required for and the same schedule of pay may be equitably applied to all positions in the same class, in the same geographical area." § 19A.9(1), The Code. This ideal could not be achieved by letting departments or agencies otherwise covered go their own way in classifying positions and developing pay plans. That is one of the evils sought to be remedied by the legislation.

Plaintiffs seem to concede as much by expressing a willingness, inconsistent with their interpretation of chapter 19A, to allow the merit commission to pass upon their classification and pay plans. Their goal is to remove the executive council and comptroller from the picture.

■■ We are persuaded the legislature, in requiring the merit commission to prepare a classification and pay plan for all positions in the merit system, did not exclude employees of the employment security commission. In requiring a uniform classification and pay plan "for each position and type of employment not otherwise provided by law" we believe the legislature intended to exclude only positions or types of employment in which a statute might directly classify a position or fix the compensation for it. We accord this meaning to the expression "not otherwise provided by law" each time it is used in §§ 19A.9(1) and (2).

■ Nothing in § 96.11(4), or in §§ 96.12, 96.13 or 97B.5, supports a contrary conclusion. As agreed by the parties, the authority of the employment security commission regarding classification and pay plans arose from the necessity that employees in the employment security department be covered by a state merit system as a condition for federal funding under the Wagner-Peyser Act, 48 Stat.L. 113, 29 U.S.C. § 49. When the department was established in 1936, Iowa did not have a merit system. The implementing legislation therefore established one for the employment security department. One of the manifest purposes of the creation of a single merit system for state employees in 1967 was to put all covered employees in the same merit system, rather than let each department or agency continue previous hiring and pay policies. It is inconsistent with this purpose, and illogical, to suggest the legislature had any intention of preserving a separate merit system for employees of the employment security department.

■ We reject plaintiffs' contention that they should not be included in the position classification and pay plans prepared by the

merit commission subject to executive council approval under §§ 19A.9(1) and (2). We hold the provision of § 96.11(4) authorizing the employment security commission to prepare its own classification and pay plan is irreconcilable with the provisions of chapter 19A and has been impliedly repealed. The trial court erred in holding otherwise.

II. Plaintiffs' additional contention that certain actions of the executive council and comptroller have violated applicable state and federal law raises two principal issues. One is whether plaintiffs are entitled to maintain under the merit system in chapter 19A the same relative status and pay which they had under their prior departmental merit system. The second is whether the executive secretary of the employment security commission has properly been exempted from the merit system.

In substance, plaintiffs allege state law and applicable federal regulations require they be maintained in the same position under the chapter 19A merit system that they would have been had the prior merit system continued in effect. From this they argue they have been denied pay increases and longevity increments they should have had. They also argue that since the executive director of the employment security commission was covered under the previous merit system, he must be covered under the new one.

Two provisions of state law are involved. As originally passed the bill contained the following language:

"All merit systems now in effect including the present joint merit system in state agencies expending federal funds shall remain in full force and effect so far as it applies to such agencies, until such time as the plan and rules promulgated under the provisions of this Act are approved by the appropriate federal agencies. At that time, such state agencies shall be subject to all provisions of this Act. *Any employee who has received appointment under the Iowa merit system shall retain his position or a position of comparable status and pay.* At such

time as the plan and rules are approved by the federal agency, the Iowa Merit System Council and all other such systems shall transfer all their records, property, and other material to the Iowa merit employment commission." Acts 62 G.A. ch. 95, § 3(15). (Italics added).

Plaintiffs assert the italicized language had the effect of freezing their rights to comparability of status and pay under the new merit system. Defendants assert the language was part of a transitional provision in the legislation, applicable only until the agencies became subject to the act. The new system was not put into effect until July 1, 1969, and defendants say the "freeze" of plaintiffs' status and pay was applicable only during that period. The code editor agreed with defendants' position. He deleted the provision when the act was printed in the 1971 Code. See 3A I.C.A. pocket pt. at 85.

■ We also agree with defendants' position regarding the meaning of this provision. Examining it in its context, we find it was a transitional provision, applicable only during the hiatus between enactment of the statute and its implementation. Any other interpretation would be inconsistent with the separate authority for revision of position classification and pay plans, layoffs, discharges, suspensions, and reductions in rank or grade. §§ 19A.9(1), (2), (14)–(16). It would also destroy the flexibility the legislature obviously sought to assure in administration of the merit system. The trial court erred in holding otherwise.

A second statutory provision relied upon by plaintiff is § 96.12, The Code, which includes this language:

"The employment security commission shall establish and maintain free public employment offices in such number and in such places as may be necessary for the proper administration of this chapter and for the purpose of performing such duties as are within the purview of the Act of Congress entitled 'An Act to provide for the establishment of a national employ-

ment system and for co-operation with the states in the promotion of such system, and for other purposes', approved June 6, 1933, as amended, and known as the Wagner-Peyser Act * * *. * *. The provisions of the said Act of Congress, as amended, are hereby accepted by this state, in conformity with section 4 of said Act, *and this state will observe and comply with the requirements thereof.*" (Italics added).

Plaintiffs maintain this provision shows an intention of the legislature to be bound by federal regulations implementing the Wagner-Peyser Act.

 While we agree with plaintiffs the legislature did signify its intention to do what was necessary to obtain the federal funding for maintenance of public employment offices under the Wagner-Peyser Act, we do not agree this gave the force of Iowa law to the federal statute or regulations implementing it. Since we have held plaintiffs are covered by the merit system established in chapter 19A, their rights to job classification and pay can rise no higher than permitted by the provisions of that chapter. Inconsistent federal statutes or regulations may affect whether Iowa remains eligible for federal funding, but do not affect the validity and effect of the Iowa law on the subject. The field of merit employment has not been federally preempted. *Donaldson v. Sisk,* 57 Ariz. 483, 114 P.2d 907 (1941); *Donaldson v. Sisk,* 57 Ariz. 318, 113 P.2d 860 (1941). The provisions of § 96.12 do not support plaintiffs' position.

Because state law prevails, we have no occasion to decide whether the challenged actions of the executive council and comptroller are inconsistent with federal regulations. We find the executive council and comptroller have authority under state law for what they have done.

The applicable provisions of chapter 19A are §§ 19A.3(2) and 19A.23.

 Under § 19A.3(2) the principal assistant or deputy in each state department is excepted from the merit system. The executive director is the principal deputy of the employment security commission and is excepted from the merit system under § 19A.3(2). He has been excepted since the new merit system became effective July 1, 1969. The evidence shows federal regulations have recognized the right of states to exempt such positions from merit system coverage since 1968. Plaintiffs' complaint is that such an exemption is nevertheless proscribed by a separate federal regulation which they maintain requires positions which were covered under the previous system to remain covered under the new one. Although evidence was presented supporting plaintiffs' argument, the exemption is expressly provided by state law. Defendants have properly applied the pertinent provision of state law. Moreover, although the federal government once took an audit exception to the exemption of the executive director, no adverse consequence regarding Iowa's eligibility for federal funding for its unemployment program has resulted.

 Plaintiffs have been denied longevity pay since the effective date of the new merit system, July 1, 1969. At first, the executive council denied such pay under its authority to pass upon pay plans under §§ 19A.9(1) and (2). Since 1971, denial of longevity pay, with an exception not applicable here, has been mandated by statute Acts 64 G.A., ch. 1, § 2; § 19A.23, The Code. Plaintiffs now attack the constitutionality of § 19A.23 on equal protection grounds because of the exception. This attack was not presented in the trial court and cannot effectively be made here for the first time. Defendants' denial of longevity pay has occurred under authority of state law. Again, although we do not decide whether this action conflicts with federal regulations, we note no adverse consequence regarding Iowa's continued eligibility for funding under the Wagner-Peyser Act has ensued.

In accordance with our holding that plaintiffs are covered by all the provisions of chapter 19A, no question exists that de-

fendants have complied with applicable state law in exempting the executive director from the merit system and in denying longevity pay to plaintiffs.

We find no merit in plaintiffs' contentions.

In erroneously sustaining those contentions, the trial court declared the executive council has no jurisdiction or control of position classification or pay plans of the employment security commission. The court entered judgment for plaintiffs for the amounts they said they would have received in salary increases and longevity pay if they had maintained after July 1, 1969, the same relative job status and pay which they had under the previous merit system. The court also declared the position of executive director of the commission to be non-exempt. Finally, the executive council and comptroller were enjoined from "interference" with or "review" of employment security commission classification and pay plans. From our disagreement with the trial court's finding of merit in plaintiffs' contentions, it follows that the declaratory judgment must be reversed in its entirety. We so hold.

Reversed.