322 So.2d 761 (1975)
LOUISIANA ASSOCIATION FOR MENTAL HEALTH et al.
v.
The Honorable Edwin W. EDWARDS, Governor of the State of Louisiana, et al.
No. 56884.
Supreme Court of Louisiana.
October 28, 1975.
Rehearing Denied November 13, 1975.
*762 William J. Guste, Jr., Atty. Gen., Robert C. Funderburk, Jr., Staff Atty., Baton Rouge, Richard V. Burnes, Gravel, Roy & Burnes, Alexandria, Charles Wm. Roberts, Mengis, Roberts, Durant & Carpenter, Baton Rouge, Richard G. Crane, Baton Rouge, for Director, La. Dept. of Corrections, for defendants-appellants.
Sam A. LeBlanc, III, Adams & Reese, New Orleans, John L. Avant, Dodd & Barker, Baton Rouge, for plaintiffs-appellees.
SUMMERS, Justice.
Plaintiffs are Louisiana Association For Mental Health, Robert E. Couhig and Mrs. Robert E. Couhig; Joe Howell, Mr. J. Henry Johnston and Mrs. J. Henry Johnston, Bobby Bickham and Mrs. Bobby Bickham, Johnny McKowen and Mrs. Johnny McKowen, John L. Avant, Mental Health Association of Baton Rouge, Louisiana, Louisiana AFL-CIO, Victor Bussie and Mrs. Fran Bussie.
Defendants are The Honorable Edwin W. Edwards, Governor of the State of Louisiana, Charles E. Roemer, II, Commissioner of Administration, Elayn Hunt, Director, Louisiana Department of Corrections, Murray Henderson, Warden, Louisiana State Penitentiary, Dr. William H. Steward, Commissioner, Louisiana Health and Human Resources Administration and Wayne Heap, Director, Louisiana Department of Hospitals.
In order to merge and consolidate into one department the executive and administrative offices, boards and commissions whose duties were of a similar nature or character, the Louisiana Department of Corrections was created in 1968 with a director and board to govern its affairs. La.R.S. 15:821-38. The scope of the department's authority was declared to comprise functions of the State in relation to the administration and operation of all state institutions for the care, custody and correction of persons sentenced for felonies or misdemeanors. The director was authorized to buy lands needed for the proper use of any institution under the jurisdiction of the department. Louisiana State Penitentiary at Angola is a correctional institution for confinement and correction of all persons sentenced to the penitentiary. As such it is under the administration and operation of the Department of Corrections. La.R.S. 15:851.
For some time it had become apparent that decentralization of the facilities at Angola was considered advisable. The inmate population was constantly increasing and the question arose for security reasons as to the number of prisoners it was considered advisable to confine in one location. Experience had demonstrated that adequate numbers of competent staff personnel were difficult to enlist in the area because of the location of the penitentiary and the demands upon that class of employee, *763 particularly medical, in the private sector. Other factors made continued enlargement of the Angola facility questionable. The penitentiary is located on the Mississippi River with poor levees, and flooding presents a recurring problem. Since the U.S. Corps of Engineers do not maintain the levees at that point, cost of improving the existing levee would be borne by the State, a substantial cost making economic feasibility questionable.
A joint effort was underway in the latter part of 1974 on the part of the Department of Corrections and other State Officials seeking other locations to accommodate part of the growing inmate population at Angola. Initially, inquiries disclosed that available sites meeting suitable security standards were the abandoned and unused facilities at Colonies 6, 7 and 9 of East Louisiana State Hospital, Jackson, Louisiana; vacant space at Greenwell Springs Hospital near Baton Rouge and a vacant school in the Shreveport area.
Soon after the adjournment of the legislative session in July 1975 the State Fire Marshall filed a report on July 15, 1975 indicating that State law required that a minimum of fifty square feet floor space was needed for each inmate. Concurrently, a suit filed several years prior thereto in the Federal District Court for the Middle District of Louisiana resulted in an order directing the Governor, Director of Corrections, and Warden of the penitentiary at Angola to file a comprehensive report to cover, among other, plans for the decentralization of the Louisiana State Penitentiary and for establishment of several smaller facilities throughout the State, together with specific timetables and funding plans for such decentralization.
Faced with these factors and the continued and projected overcrowding of the penitentiary, it was decided by the Governor, the Administrative Assistant to the Governor, the Director of the Louisiana Health and Human Resources Administration and the Director of Corrections, and others, to employ the facilities at Colonies 6, 7 and 9 located on lands belonging to the State and held under the Administration of the Louisiana Health and Human Resources Administration. Accordingly, negotiations for the lease and its preparation were promptly undertaken. On August 20, 1975 a lease was confected whereby the Louisiana Health and Human Resources Administration let to the Louisiana Department of Corrections approximately 1,900 acres of land containing Colonies 6, 7 and 9. The lease is for a term of 25 years and is executed pursuant to the provisions of Sections 1291 through 1294 of Title 41 of the Revised Statutes and pursuant to the authority of Section 14 of Article VII of the Constitution of 1974 and Sections 1751 through 1767 of Title 46 of the Revised Statutes.
Section 1291 of Title 41 authorizes any political subdivision of the State of Louisiana to lease without advertisement for bids "from any other political subdivision, the State of Louisiana, the United States of America or any agency thereof, any public lands and improvements thereon of which it has title, custody and possession."
In the meantime, on August 8, 1975, the Commissioner of Administration contracted with Buquet & LeBlanc, Inc., to repair and renovate Colonies 6, 7 and 9 to house minimum security prisoners as directed by the Facility Planning and Control Department of the State of Louisiana. The contract involved an expenditure of $500,000.
The General Appropriations Bill (Act 16 of 1975) provided that only appropriated funds could be expended unless the head of the state agency which requires the expenditure of a deficit certified to an emergency, the expenditure was approved by the Interim Emergency Board, the Division of Administration, the legislative auditor, and the Governor and was then approved by the legislature. When not in session, the legislative approval of two-thirds to be obtained by mail ballot.
*764 In the meantime, the Director of Corrections certified to the Governor that an emergency situation existed within the Department of Corrections, and it was necessary to expend funds in excess of those appropriated. The Governor then, on August 18, 1975, declared that a state of emergency existed within the Department of Corrections, and the Department of Corrections should therefore be permitted to expend funds needed to meet the emergency.
Because the emergency had not been declared prior to confection of the contract with the contractors Buquet and LeBlanc, Inc., that contract was cancelled on August 20, 1975 and renegotiated on that date. See La.R.S. 38:2211, subd. D. To comply with formal requirements, another declaration of emergency was issued and published on August 24, 1975. It is the announced intention of defendants to renegotiate a contract like the August 8, 1975 contract and to proceed accordingly.
While these events were in progress, plaintiffs instituted suit in the Twentieth Judicial District Court in East Feliciana Parish, the location of East Louisiana State Hospital, for an injunction to restrain and enjoin defendants from transferring convicted felons from Louisiana State Penitentiary at Angola to East Louisiana State Hospital at Jackson, other than those assigned to the forensic medical unit; or from expending monies appropriated for the operation and maintenance of the penitentiary at Angola to convert the hospital at Jackson into a penal institution by quartering convicted felons there.
A temporary restraining order was issued and defendants were cited to show cause why a preliminary injunction should not issue. To these proceedings defendants filed dilatory exceptions of lack of procedural capacity, peremptory exception of no right and no cause of action, or no interest in the plaintiffs to institute suit. These exceptions were overruled by the trial judge and are urged on this appeal.
As a result of the hearing held on the application for a preliminary injunction, the trial judge enjoined the plan defendants proposed to implement. The injunction was made permanent on the same evidence.
The exceptions referred to are grounded upon allegations that the individual plaintiffs have no authority or procedural capacity to represent any individuals at the hospital in Jackson; that the Louisiana Association for Mental Health has not alleged that it either acts through corporate resolutions or that it is not required to do so by the terms of its charter and that the plaintiffs as individuals and associations have failed to assert a real and actual interest in the matter.
Plaintiffs' petition is based upon allegations that defendants have publicly announced their intention to transfer for an indefinite period four to five hundred convicted felons from the penitentiary at Angola to the hospital at Jackson contrary to the law designating the hospital at Jackson as a facility for the treatment of the mentally ill and inebriate.
The proof does not support this allegation. In the vast land area heretofore assigned to the hospital at Jackson, the area leased in which Colonies 6, 7 and 9 are located is more than a mile away, separated by a ravine and woodland from the nearest hospital facility. In addition, the record supports the conclusion that the renovated facilities at Colonies 6, 7 and 9 will be operated under a different name to further disassociate it with the hospital at Jackson. It will be surrounded by proper fences and guard towers to assure confinement of the inmates and will have no relation to the Jackson facility, other than the use of some of the same medical personnel for routine medical calls to be conducted separately from the hospital. It is not correct to say under these facts that the proposal to transfer prisoners to Colonies 6, 7 and 9 is a confinement of those prisoners in the hospital at Jackson or that it will *765 convert the hospital into a penal institution contrary to law. See La.R.S. 40:2013.1 and La.R.S. 15:851.
Plaintiffs further allege that the proposed transfer of penitentiary inmates to Colonies 6, 7 and 9 is contrary to Section 16 of Article III of the Louisiana Constitution of 1974 providing that no money shall be withdrawn from the state treasury except through specific appropriation.
At the trial of the preliminary injunction the principal evidence presented with respect to the funds to be used in the contemplated action by defendants is the testimony of the Commissioner of Administration. He testified that in the initial phase of the implementation of the plan it is the intention of defendants to use the monies appropriated to the Department of Corrections. The plan of prisoner transfer, he said, was considered an appropriate expenditure of that department since the law charged that department with the responsibility of incarcerating prisoners wherever that may be required, either at the penitentiary, a first offender facility, a female facility or elsewhere. In the short run the funds of that department, and possibly funds available from authorizations under the Capital Outlay Bill (La.Act 823 of 1975), would be drawn upon for the $500,000 expenditure. Funds allocated to the Interim Emergency Board and funds appropriated to the penitentiary at Angola would also be considered as a source for expenditures on the initial requirements.
It is to be noted here that in 1975 $12,153,452 are appropriated to the Department of Corrections and $5,772,476 are appropriated to the Louisiana State Penitentiary. These funds, it is inferred, could supply the needed $500,000 for the initial expenditure without unduly affecting the administration of the Department of Corrections or the Angola operations. These steps would be taken until such time as defendants could follow prescribed procedure tc undertake a more onerous deficit expenditure which the appropriations to the Department of Corrections and the Louisiana State Penitentiary would not sustain.
At the same time, defendant would work to develop a more detailed analysis of the expenditures which should be budgeted and provide for them under the emergency provision of the appropriation act. This would, of course, involve approval of the legislature by mail ballot if necessary.
These facts do not warrant the conclusion that the proposed short-term expenditures from funds appropriated to the Department of Corrections or to the Louisiana State Penitentiary of $500,000 is violative of the constitutional prohibition against withdrawal of funds from the state treasury unless through a specific appropriation. Undoubtedly the announced plan of defendants to transfer approximately 500 minimum security prisoners to Colonies 6, 7 and 9 is an activity within the contemplation of the authority and responsibility of the Department of Corrections.
And under these emergency conditions at Angola, when the prison population far exceeds the accommodations available, and when the overcrowding creates a noticeable and serious security problem due to the prisoner concentration in one location, no violation of the constitution occurs because appropriations for Angola are expended for transfer of some of its prisoners to another locality. All funds appropriated to Louisiana State Penitentiary are not invariably expended at Angola. Some are expended for operation of work release programs at Camp Beauregard near the city of Alexandria. Operation of Jackson Barracks, far removed from Angola, consumes part of these funds, and salaries of guards assigned to inmates at the hospital in New Orleans are funded from the penitentiary appropriation. In short, the broad category of the penitentiary appropriation does not limit expenditure to the Angola operation alone, so long as the expenditure is for an activity associated with the penitentiary and is in keeping with the overall *766 responsibility and authority of the Department of Corrections.
It is further to be noted that utilization of Colonies 6, 7 and 9 is a more economical and expeditious solution to part of the problem created by overcrowding at Angola. Expansion of facilities at Angola, which plaintiffs suggest is appropriate under the circumstances, would properly require improvement of the levee and construction from the ground up of new buildings and the necessary auxiliary structure. This would involve a great deal more time and expense than quartering the inmates in Colonies 6, 7 and 9. Even then, the problems of obtaining needed staff and other personnel at this centralized activity would not be as well resolved as it would be at Colonies 6, 7 and 9. Experience has demonstrated that it is difficult to persuade civilian and medical personnel to accept employment at Angola, and the private sector in the area does not offer adequate medical personnel. Dispersing or decentralizing the prison activity offers better opportunities for filling this need. Instead of affecting taxpayers adversely as plaintiffs assert, therefore, the announced plan will result in an economy and saving to the taxpayer. More importantly, the critical conditions at Angola will be sooner alleviated.
A plausible argument can be made that the constitutional requirements that funds cannot be "withdrawn from the State Treasury", La.Const. art. III, ¶ 16(A) (1974); and that "money shall be drawn from the state treasury only pursuant to appropriation", La.Const. art. VII, ¶ 10(A) (1974), do not become operative until an attempt is made to withdraw the funds from the State Treasury. This has not yet occurred, and when this becomes necessary, according to the Commissioner of Administration, the Legislature will have authorized further expenditures either while in session or by mail ballot if not in session.
However, in view of the finding that no violations of the appropriations to the Department of Corrections or the Louisiana State Penitentiary are involved in the facts of this case, it is unnecessary for the decision to turn upon the argument that funds have not yet been withdrawn and the plaintiffs' objection to the plan is for that reason premature.
The basic thrust of plaintiffs' suit, and the primary and laudable interest they display in the matter, is that the announced plan to transfer inmates to Colonies 6, 7 and 9 will convert the hospital at Jackson into a penitentiary. To do so, it is argued, will adversely affect the treatment and attitude of the patients and the attitude of the public generally and minimize public use and acceptance of the hospital for the treatment of the mentally ill and the inebriate. As previously noted, the facts do not support such a conclusion. The plan will not result in converting the hospital into a penitentiary. As the facts are understood, the operation of the hospital will be unaffected, and proper conduct of the activity at Colonies 6, 7 and 9 will not interfere with patient treatment, nor will it adversely influence the public to discontinue use of the treatment the hospital offers to the detriment of the mentally ill and inebriate as plaintiffs contend. The colonies will be far enough removed from the hospital and isolated therefrom to bear a separate designation. Defendants contemplated a separate name as part of the plan. And an effort will also be made to influence public acceptance of the activity as a separate entity apart from the hospital.
These conclusions are supported in part by the testimony of a psychiatrist called by plaintiffs who was of the opinion that education of the public could possibly remove the stigma which may result from locating prison inmates in proximity to the hospital. Specifically, Dr. William H. Stewart, Commissioner of the Louisiana Health and Human Resources Administration, defendants' *767 witness, supports the Court's view in the matter. His entire working career has been in the field of public health. He is a past Chancellor of the Louisiana State University Medical Center, a past Surgeon General of the United States Public Health Service and Director of the Heart Institute. In his opinion the implemented plan would result in no impact on the patients at the hospital. This will be due to the geographic isolation of Colonies 6, 7 and 9 and the past favorable experience with the Forensic Unit at the hospital.
These findings, we believe, minimize the effect of the opinions of the psychiatrists and other experts who testified in support of plaintiff's contention that the plan would adversely affect the patients and impair the hospital's main objective. Their opinions were to some extent based upon the supposition that a virtual conversion of the hospital into a penitentiary was involved, and that a significant connection between the hospital and Colonies 6, 7 and 9 would take place. Our conclusion is to the contrary.
Plaintiffs' contention that the lease granted by the Health and Human Resources Administration to the Department of Corrections is invalid is not well taken. The Human Resources Administration is the successor to the Louisiana Department of Hospitals whose powers to sell property under its jurisdiction to any other state agency with the approval of the governor are set forth in Section 2004 of Title 40 of the Revised Statutes. This power to sell, when considered in connection with the general authority for inter-agency leasing already noted, necessarily includes the lesser authority to lease. See La.Rev.Stat. of 1870, Sec. 1760; La.Rev.Stat. 28:241 et seq. (1950); Act 35 of 1958; La.Rev.Stat. 40:2001 et seq. (1950); La.Rev.Stat. 46:1751. The property involved in the lease is administered under the authority of the Health and Human Resources Administration.
The contested lease is in authentic form, for a term of 25 years and is stated to be in consideration of ". . . the mutual benefit to be derived by each state agency involved and through them the benefit to be derived by the people of the State of Louisiana."
Aside from the legality of the plan generally, the principal objection to the lease is the fact that no price in money is stipulated as required by Article 2671 of the Civil Code. However, under these circumstances, the Court is permitted to validate this transaction by a liberal construction of Article 2671 of the Civil Code, the general authority for inter-agency leasing and the authority of the Health and Human Resources Administration to sell to another state agency. A lease need not be based upon a price certain and determinate. It may consist of other considerations, the examples in the article, "a certain quality of commodities, or even in a portion of the fruits yielded by the thing leased", being illustrative only.
Thus, upon these conclusions we find no merit to this attack by plaintiffs upon defendants' announced intention to repair and renovate Colonies 6, 7 and 9 and to transfer prisoners from Angola to that location. For these reasons it is not necessary to decide the exception aimed at the capacity and interest of the defendants to maintain this action.
For the reasons assigned, the judgment appealed from is reversed and set aside, and the injunction issued herein by the District Court is dissolved and recalled.