**Mary LAMB, Individually and as Administrator of the Estate of Etta Lorene Lynch, Deceased, Plaintiff–Appellant/Cross–Appellee,**

v.

**NEWTON–LIVINGSTON INC., An Iowa Corporation, and Heritage Manor Care Center, Defendants–Appellees/Cross–Appellants.**

No. 94–1613.

Court of Appeals of Iowa.

May 31, 1996.

334

W. Don Brittin, Jr., and Hayward L. Draper of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant.

Joel T.S. Greer of Cartwright, Druker & Ryden, Marshalltown, for appellees.

Steven S. Zaleznick, Patricia DeMichele, Dorothy Siemon and Bruce Vignery, Washington, D.C., for amicus curiae American Association of Retired Persons.

Thomas P. Monaghan, New Hope, Kentucky, and James E. Murphy, Virginia Beach, Virginia, for amicus curiae American Center for Law and Justice.

Heard by SACKETT, P.J., and HABHAB and HUITINK, JJ.

SACKETT, Presiding Judge.

Plaintiff-appellant/cross-appellee Mary Lamb, an adult, was awarded $400,000 for loss of parental consortium after her mother Lorene Lynch committed suicide while a resident of a nursing home owned and operated by defendants-appellees/cross-appellants Newton–Livingston Inc. and Heritage Manor Care Center. The trial judge ordered a new trial unless Mary accepted a remittitur to $100,000. Mary refused and this appeal follows. We affirm and remand.

Mary Lamb, individually and as the administrator of her mother's estate, brought this action contending defendants were guilty of negligence in causing her mother's death. Mary also claimed she suffered intentional and negligent infliction of emotional distress. She asked for compensatory and punitive damages. The trial court directed verdicts for defendants on the claims of negligence and intentional infliction of emotional distress

and the claim for punitive damages. The jury found defendants negligent and awarded the estate nothing, but awarded Mary $400,-000 for loss of parental consortium. Defendants made a motion for new trial. The trial court ordered a remittitur of the verdict to $100,000 and ordered a new trial if it were not accepted. Defendants accepted the remittitur.

Mary appeals and defendants cross appeal. Mary claims the court erred in: (1) granting the motion for new trial; (2) granting a directed verdict on her emotional distress claims; (3) granting a directed verdict on her claims that misrepresentations by the nursing home caused her mother's death; (4) granting a directed verdict on her claim for punitive damages; (5) sustaining defendants' objections to testimony regarding the emotional impact on her, the extent of her love for her mother, and the impact of a nursing home employee's comments on her; and (6) ordering interest should begin from the date of the judgment rather than the filing of the petition.

Defendants on cross-appeal claim the court erred in not excluding evidence of post-death mental damages to Mary and in not instructing the jury to disregard such evidence.

In an amicus curiae brief, the American Association of Retired Persons argues the trial court abused its discretion in determining the jury's award was excessive and based its ruling on age-discriminatory reasoning. Additionally, it claims the trial court erred in failing to submit the punitive damage issue to the jury. In an amicus curiae brief, the American Center for Law and Justice also argues the court erred in failing to submit the punitive damage issue to the jury. Both the American Association of Retired Persons and the American Center for Law and Justice claim the threat of punitive damages is necessary to protect persons in nursing homes.

Decedent, who was called "Rene", was seventy-six years old when she committed suicide. Her husband died in 1973. They have two children who survive: Mary, the plaintiff and administrator in this action, and a son who has had nothing to do with his mother since he reached adulthood. Mary and her mother, Rene, have had a close relationship. Mary and her husband have been decedent's family for the past many years.

Decedent had suffered a series of serious health problems and had frequent hospitalizations. When she took up residence in defendant nursing home in June 1990, an agreement was signed as was the Residents' Bill of Rights. Decedent was a resident of the home from July 1990 until her death on April 3, 1991.

Decedent had not wanted to go to the nursing home and did not want to be in a nursing home. She was a difficult resident for the home. She also placed numerous pressures on Mary, who on more than one occasion became extremely exasperated with her. Mary visited her mother frequently and was consistently called by the home when her mother had problems or they had unresolved disputes.

## I.

The first question is whether the trial court abused its discretion in awarding defendants a new trial. The trial court found the jury verdict excessive and not supported by substantial evidence.

In addressing this issue, the question is whether the trial court abused its discretion. *Manno v. McIntosh*, 519 N.W.2d 815, 818 (Iowa App.1994).

The trial court's ruling indicates he considered the decedent was in a nursing home, in ill health, and had a life expectancy of 9.71 more years, and Mary visited her mother three times a week on an average, in ordering the remittitur. Plaintiff contends these are not valid reasons for ordering the remittitur.

In *Audubon–Exira Ready Mix, Inc., v. Illinois Central Gulf R.R. Co.,* 335 N.W.2d 148 (Iowa 1983), the Iowa court discussed claims for loss of parental consortium. The court said:

[W]e said that the term "services" in the section included parental "affection" and "guidance":

Parental affection for the children probably will not cease after minority and the

father may still continue to contribute to his children's support. That is a question for the jury to decide according to the evidence of the assurance the parental affection may give aid and support to the child after maturity.

The jury in considering loss to the children by their parents' deaths is not limited to the time during which they are minors if it can conclude from the evidence such services would have continued after they attained majority. There is no such limitation in the statute, ... nor is there any such limitation in the value of the mother's services or a father's protection to their children at the critical period of their lives when they are about to enter into more or less distinct and separate lives upon attaining their maturity. Damages are not restricted to loss of benefits to which plaintiffs have a legal right. [Citations omitted.]

The ... children have a right to look forward to care, advice and counsel from [their mother] for the remaining years of her normal life expectancy. *Id.* Our statute permits the jury to include in its award the value of support as a parent and contains no limitation as to a time element during which a child has the right to expect financial aid. *Id.*

Services as used in section 613.15 includes loss of companionship and society. But does not include grief, mental anguish or suffering.

*Audubon–Exira,* 335 N.W.2d at 150.

■ The question is whether the trial court abused its discretion in determining the evidence decedent's parental advice, care, guidance, and counsel, coupled with loss of companionship and society, justified an award of $400,000. From the offset, we make it clear the fact decedent was in poor health and in a nursing home is relevant only as it relates to her life expectancy and her ability the give her daughter parental advice, care, guidance, and counsel.

■ Decedent's emotional status was fragile, as was her physical health. She was demanding on her daughter. There was no evidence in recent years she had given pa-

rental care. Decedent's emotional state was such there is no substantial evidence to support a finding decedent had the ability to give parental advice or counsel.

There is evidence when her mother died Mary lost her mother's companionship and her society. Damages for consortium include company, cooperation, affection, and aid. *Fuller v. Buhrow,* 292 N.W.2d 672, 675 (Iowa 1980). We recognize mother and daughter had a close and satisfying relationship. The relationship had changed as Rene aged to one where Mary gave the guidance, care, and counsel. This fact, along with other evidence, supports a finding when Rene died Mary lost her companionship and society. Mary visited her mother often in the nursing home; Mary took Rene to her home for holidays despite difficulty in doing so, and she took her on outings. The evidence in the record clearly supports a finding Mary was a very loving and dutiful daughter and her mother was important to her. She was entitled to damages for the loss of her mother's affection, companionship, and society. The question is whether the trial court abused its discretion in finding $400,000 an excessive verdict.

The loss of a mother is not a damage we can measure in money, and money will not replace her loss. But, money is the only way Mary can be compensated. The money damages must bear some relationship to the non-economic loss.

■ The assessment of damages is traditionally a jury function and a jury's decision on awarding damages should be set aside only for the most compelling reasons. *Rees v. O'Malley,* 461 N.W.2d 833, 839 (Iowa 1990); *Olsen v. Drahos,* 229 N.W.2d 741, 742 (Iowa 1975).

■ A damage award should not be set aside unless it is (1) flagrantly excessive or inadequate, or (2) shocks the conscience or sense of justice, or (3) raises a presumption it is the result of passion, prejudice, or other ulterior motive, or (4) lacks evidential support. *Holmquist v. Volkswagen of America, Inc.,* 261 N.W.2d 516, 524 (Iowa App.1977).

■ In reviewing damage awards, we consider the evidence in the light most favorable

to the plaintiff. *DeBurkarte v. Louvar*, 393 N.W.2d 131, 139 (Iowa 1986); *Ort v. Klinger*, 496 N.W.2d 265, 269 (Iowa App.1992).

Plaintiff relies on *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 869 (Iowa 1994). Factually distinguishable, there the court says a comparison of verdicts is of little value in determining whether an award in a particular case is adequate or inadequate.

We do, however, find support for the trial court's decision in language contained in *Lee v. Giangreco*, 490 N.W.2d 814, 819–20 (Iowa 1992), where the court suggested if a verdict for $150,000 were only for the non-economic injury of emotional distress they might see merit in appellant's contention it was excessive.

We cannot say the trial judge abused his discretion in ordering a remittitur or a new trial.

## II.

■ The next question is whether the trial judge abused his discretion in directing a verdict for defendants on Mary's claim for emotional distress, a claim recognized by the Restatement and several Iowa cases. *See, e.g., Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984); *Powell v. Khodari–Intergreen Co.*, 334 N.W.2d 127, 129 (Iowa 1983); Restatement (Second) of Torts § 46(1) (1965). The elements of this tort are:

(1) Outrageous conduct by the defendant;

(2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) The plaintiff has suffered severe or extreme emotional distress; and

(4) Actual proximate causation of the emotional distress by the defendant's outrageous conduct.

*Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193 (Iowa 1985); *Vinson*, 360 N.W.2d at 118; *Powell*, 334 N.W.2d at 129.

Although referred to as an "intentional infliction of emotional distress," neither the Restatement nor Iowa cases actually require proof of an intentional act; a "reckless disregard of the probability of causing" emotional

distress is enough. *See, Vinson*, 360 N.W.2d at 118; *Harsha*, 346 N.W.2d at 800; *Powell*, 334 N.W.2d at 129; Restatement (Second) of Torts § 46. In view of this, we will simply refer to the claim as a "tortious" infliction of emotional distress.

We look to the evidence introduced at trial. In Mary's brief, she says the facts support her claim. Mary contends her emotional distress resulted from statements made by an employee of the nursing home on Tuesday afternoon. These statements were Rene caused herself to vomit at the table. Mary contends Rene's vomiting was involuntary. Mary contends these statements caused her to withhold visits from her mother, which caused her mother to attempt suicide. She also claims emotional distress from the same employee's statements of both Tuesday afternoon and at her mother's deathbed on Wednesday that the employee did not know why Rene wanted to hurt Mary.

■ The statements made by the employee do not rise to the level of outrageous conduct. The record is filled with evidence of Rene's unhappiness with life, her complaints of numerous physical ailments, and her lack of cooperation with both the personnel in the home and with her daughter. Rene was not a happy person. She was alienated from her son. The record shows Mary was very attentive to her mother's needs and was making every honest attempt to help make her content and happy. Mary was not able to care for Rene in her home for any extended periods and was forced to rely on the care of others. Rene was not an easy resident to care for in the home. Evidence in the record of her complaints and behavior make it clear she would try the patience of the most patient person. When citizens are no longer able to care for themselves in their homes and families cannot provide the care, nursing homes such as the one where Rene resided provide for their needs. While we would wish this care were always perfect, human care is never perfect. The home had responsibilities to Rene and the other residents. The most the evidence shows is Rene created a difficult situation by throwing up at the table. The nursing home employee gave

Mary her opinion that Rene's throwing up was self-inflicted. Mary is of the opinion it was not. Records introduced in evidence also indicate during this time period Rene was difficult in a number of other ways and had been extremely difficult for Mary on a very recent overnight visit to her home. The nursing home employee suggested Rene's behavior might be modified if Mary restricted her visits. Mary accepted the suggestion. Whether this was good advice or bad advice is not the issue. The question is whether giving this advice was outrageous. We cannot find it was.

■ The second statement Mary complains was outrageous was the same employee's comments that she could not understand Rene dying to hurt Mary, who had been so good to her. The employee's words may have been poorly chosen, but they were not outrageous. They were directed at telling Mary she did so much for her mother and perhaps to relieve her guilt that she may not have done enough. Words of sympathy are not always carefully crafted, but this does not constitute outrageous conduct.

Mary further contends emotional distress should be recoverable in this negligence action even if she has not proven intentional conduct because the nature of the relationship between the parties is such a duty arises to exercise ordinary care to avoid causing emotional harm.

Mary contends her claim for negligent infliction of emotional distress should have been submitted. She relies again on the same alleged false statements she said caused her to withhold visits and caused her mother to attempt suicide. She further advances this claim is supported by her emotional distress at Rene's deathbed when the nursing home employee said she did not know why Rene wanted to hurt Mary. Mary contends there was a breach of duty arising from the nature of the relationship between Heritage Manor and Mary to avoid causing her emotional harm.

■ Because Mary can sustain no claim of physical injury, she would ordinarily be denied recovery in a negligence action for emotional distress. *Oswald v. LeGrand,* 453

N.W.2d 634 (Iowa 1990); *Wambsgans v. Price,* 274 N.W.2d 362, 365 (Iowa 1979). An exception exists, however, where the nature of the relationship between the parties is such there arises a duty to exercise ordinary care to avoid causing emotional harm. *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989). Such claims have been recognized in the negligent performance of contractual services that carry with them deeply emotional responses in the event of breach as, for example, in the transmission and delivery of telegrams announcing the death of a close relative, *Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895); services incident to a funeral and burial, *Meyer v. Nottger,* 241 N.W.2d 911, 920 (Iowa 1976), and to the delivery of medical services, *Oswald,* 453 N.W.2d at 639; and "mental concern and solicitude" the breach of a contract incident thereto "will inevitably result in mental anguish, pain and suffering," *Meyer,* 241 N.W.2d at 920 (quoting *Stewart v. Rudner,* 349 Mich. 459, 84 N.W.2d 816). Other authorities are in accord. *See Geibel v. U.S.,* 667 F.Supp. 215, 220 (W.D.Pa.1987) (recognizing malpractice claim for emotional distress based on injury induced by physician through "words or actions" as well as direct injury from therapeutic and diagnostic measures); *Taylor v. Baptist Medical Ctr.,* 400 So.2d 369, 374 (Ala.1981) (recognizing exception to denial of recovery for purely mental anguish where duty "so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering").

We find no authority to support extending an action for emotional distress to this factual situation and affirm the trial court on this issue.

## III.

■ Plaintiff contends the trial court should have submitted the issue of punitive damages on each of her claims. The amicus curiae brief advances such submission is necessary to protect persons in nursing homes. Again, plaintiff relies on the statements made by the employee set forth above. There is

no showing the statements were materially false and made knowingly with an intent to induce Mary to act. *See Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981). We have found no outrageous conduct. The trial court was correct on this issue. *See McGough v. Gabus,* 526 N.W.2d 328, 331 (Iowa 1995).

## IV.

Plaintiff next contends the trial court erred in ordering interest run from the date of the judgment rather than from the date the petition was filed. Both plaintiff and defendants recognize Iowa Code section 668.13 provides interest on future damages runs from the date of the judgment, not from the date a petition is filed. Plaintiff did not seek to separate the consortium damages as past and future. Defendants contend therefore plaintiff has no grounds to complain. Plaintiff contends defendant bore the burden of separating out the future damages and, because they failed to do so, judgment on the entire verdict should run from the date of the filing of plaintiff's petition. We find it unnecessary to determine whose burden it was to separate the future damages from the verdict. On retrial, the damages should be separated and plaintiff should be awarded interest only on past, not future, claims for loss of consortium. If plaintiff should on remand accept the remittitur, then the trial court should determine what part of that amount is for future loss of consortium and award interest from the date of the filing of the petition on the balance.

## V.

 Plaintiff further contends the trial judge abused its discretion in sustaining objections to testimony regarding the emotional impact of Rene's suicide on Mary, the extent of Mary's loss of Rene's love and affection, and an employee's attitude of the impact of Rene's suicide on Mary. Defendants contend the trial court erred in not excluding evidence of mental damage to Mary after Rene's death. We review evidentiary rulings for an abuse of discretion. *Doe v. Ray,* 251 N.W.2d 496, 501 (Iowa 1977). Iowa has a liberal rule on the admission of opinion evidence and generally the admission of such evidence rests in the trial court's discretion. *Id.* We do not find on this record the trial court abused its discretion.

We affirm the trial court. We remand to allow plaintiff to accept the remittitur or for a new trial on the issue of damages for loss of Mary's parental consortium.

**AFFIRMED AND REMANDED.**

STREIT and VOGEL, JJ., take no part.